UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KOTY CHEYENNE LEWIS,

    Petitioner,

v.                       Case No: 2:19-cv-449-JES-MRM

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.
_____/

**OPINION AND ORDER**

Before the Court is Petitioner Koty Cheyenne Lewis's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. #1). Lewis challenges his conviction and sentence for second degree murder, aggravated assault, and possession of drug paraphernalia.

**I.    Background**

The State of Florida charged Lewis with murdering Gordon Suleiman (Count 1), assaulting Gregory James with a firearm (Count 2), and possessing drug paraphernalia (Count 3). (Doc. #12-2 at 6). Lewis pled not guilty, and Assistant Public Defender Beatriz Taquechel represented him at trial. The charges stemmed from Lewis's encounter with three bail bondsmen: Gregory James, Gordon Suleiman, and Cynthia Suleiman.

The Court will summarize the relevant trial testimony as described in the Response (Doc. #12), which Lewis agrees is accurate. (See Doc. #26). Lewis was arrested for violating probation in October 2010. James bonded Lewis out of jail and agreed to produce Lewis if he failed to appear at court on December 6, 2010. On December 15, 2010, James received notice that Lewis missed the court date and enlisted the Suleimans to help locate and arrest Lewis. On December 26, 2010, the trio found Lewis on his family's farm, and during the encounter Lewis fatally shot Gordon Suleiman. The details were disputed at trial.

According to Gregory James and Cynthia Suleiman, upon arriving at the property, they first encountered Lewis's sister, Marti Lewis. James approached and spoke with Marti, while Cynthia—armed with a taser—knocked on the door of the adjacent trailer. Lewis suddenly appeared from behind the trailer and pointed a rifle at James and Gordon. James jumped behind the truck, and Gordon—without drawing his gun—tried to diffuse the situation by identifying himself as a bondsman and asking Lewis to surrender. Lewis ran, and the Suleimans gave chase. Marti fled in the truck.

After jumping a fence, Lewis turned and pointed the rifle at Gordon, who drew his Glock 45. Lewis jumped a second fence and again pointed his rifle at Gordon. Gordon drew his gun again and

demanded that Lewis surrender.  Lewis ran to a clearing in the woods and again aimed at Gordon.  Gordon put his hands up with the Glock dangling from his finger.  Lewis fired one shot through Gordon's chest, killing him.  Cynthia ran to Gordon, attempted CPR, and pleaded for Lewis to help.  Lewis ran, stashed the rifle, and hid under an outhouse until discovered by Glades County Sheriff's deputies.

Lewis and his sister, Marti, described the encounter differently.  While parking her truck, Marti saw the three bondsmen rushing towards her—the Suleimans with guns drawn.  Cynthia ran towards the front door of the trailer, and Marti jumped in front of her.  Cynthia pointed a gun at Marti and stated she had a warrant.  Marti moved towards Cynthia, who took off running.  Lewis appeared out of nowhere—Marti did not know he was on the property—and Gordon ran towards Lewis with gun drawn.  While fleeing the scene, Marti saw Lewis and Gordon stop running.  Lewis yelled something, and Gordon advanced.  Marti could not see Gordon's hands.  Lewis raised his rifle, and Marti heard three shots.  She believed Gordon fired twice and Lewis fired once. Marti then left.

Lewis testified that after skipping town to avoid arrest, he returned on December 26, 2010, intending to feed the cows and turn himself in.  After feeding the cows, Lewis heard loud voices coming

from Marti's house.  Lewis stepped onto the back porch and saw Gordon—who Lewis did not know—point a gun at him.  Gordon did not speak.  Lewis ran to his truck, grabbed a rifle, and fled towards the fence line.  After jumping two fences, Lewis was exhausted and stopped running.  Gordon continued towards Lewis without speaking.  Lewis, fearing for his life, fired a single shot.  He then hid until he was discovered and arrested.

The jury found Lewis guilty on all counts.  (Doc. #12-2 at 14-15).  The trial court sentenced him to a total of 465.6 months in prison, followed by 20 years of probation.  (Id. at 29-33).  Lewis appealed, and the Second District Court of Appeals of Florida (2nd DCA) affirmed without a written opinion.  Lewis v. State, 177 So. 3d 616 (Dist. Ct. App. Fla. 2015).  Lewis then filed a Petition for Writ of Habeas Corpus, which the 2nd DCA denied.  (Doc. #12-2 at 239).

Lewis also filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  The postconviction court summarily denied it.  (Doc. #12-3 at 2-12).  And the 2nd DCA affirmed without a written opinion.  Lewis v. State, 272 So. 3d 394 (Dist. Ct. App. Fla. 2019).  Lewis's federal habeas Petition timely followed.

## II. Applicable Habeas Law

### a. AEDPA

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. White, 134 S. Ct. at 1702; Casey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was

5

"contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 531 (quoting Williams, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." Sexton v. Beaudreaux, 138

6

S. Ct. 2555, 2558 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

**b. Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person may have relief for ineffective assistance of counsel. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. Id.

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Sealey v. Warden, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting Strickland, 466 U.S. at 689). And "[a] state court's determination that a claim lacks

merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Franks v. GDCP Warden, 975 F.3d 1165, 1176 (11th Cir. 2020) (quoting Harrington, 562 U.S. at 101). Thus, a habeas petitioner must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." Id.

The second prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Sealey, 954 F.3d at 1355 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The critical question on federal habeas review is not whether this Court can see a substantial likelihood of a different result had defense counsel taken a different approach. Mays v. Hines, 141 S. Ct. 1145, 1149 (2021). All that matters is whether the state court, "notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." Id. (quoting Knowles v. Mirazayance, 556 U.S. 111, 123 (2009)).

"An ineffective-assistance claim can be decided on either the deficiency or prejudice prong." Sealey, 954 F.3d at 1355. And

"[w]hile the Strickland standard is itself hard to meet, 'establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.'" Id. (quoting Harrington, 562 U.S. at 105).

**III. Analysis**

   a. **Ground 1: Trial counsel failed to impeach Cynthia Suleiman**

Lewis first argues he did not receive effective assistance of counsel because Taquechel did not impeach Cynthia Suleiman with a pre-trial statement. During a police interview on December 26, 2010, Mrs. Suleiman stated that James "didn't make any contact with [Lewis]." (Doc. #12-5 at 47). Lewis argues that impeaching Cynthia with this statement during cross-examination "could have led the jury to find him innocent of aggravated [sic] and would have called into question the veracity of all further testimony from either witness, i.e., Mrs. Suleiman and Mr. James." (Doc. #2 at 6). Lewis does not identify any specific trial testimony that is inconsistent with Mrs. Suleiman's pretrial statement. Rather, the basis of his argument seems to be that the statement cuts against the State's charge that he pointed his rifle at James and Mr. Suleiman before running.

The postconviction court found this ground refuted by the record and meritless:

9

> 8. Mrs. Suleiman's testimony was not materially inconsistent with her statement made to law enforcement on the day of the crime. Rather, Defendant takes the statement out of context in an effort to paint it as an inconsistency…Defendant also assumes that "did not make contact with him" necessarily means "did not point a gun at him." This is a conclusory assumption of Defendant and not a factual reality of the record. There is no likelihood that pointing out this "inconsistency" would have changed the jury's verdict. For the same reason stated above, pointing out the "inconsistency" would have had no effect on the jury's finding of guilt for the murder charge.

(Doc. #12-3 at 6).

The Court agrees that Mrs. Suleiman's pretrial statement—when considered in context—was not inconsistent with her trial testimony or the aggravated-assault allegations. Mrs. Suleiman was not in a position to see Lewis when he appeared behind the trailer and pointed his gun at James. She was in the front of the trailer, knocking on the door and speaking to Marti Lewis. (Doc. #12-8 at 342). Mrs. Suleiman did not see Lewis until after he started running. (Id. at 342-43).

The postconviction court's conclusion that cross-examining Mrs. Suleiman with the pretrial statement would not likely have led to a different result is reasonable. The statement did not meaningfully contradict her testimony. Lewis has not established either prong of Strickland. The Court denies Ground 1.

### b. Ground 2: Trial court improperly instructed the jury

Lewis next argues the trial court's jury instructions were

inconsistent with state law. Lewis does not claim the jury instructions ran afoul of any federal law. This ground is thus not cognizable on federal habeas review. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67 (1991). Ground 2 is denied.

### c. Ground 3: Trial court erroneously denied motions for acquittal and for a new trial

Lewis's explanation for Ground 3 is brief and conclusory. He claims the trial court erred by denying a judgment of acquittal or a new trial, but he does not explain why he was entitled to either. This claim—like Ground 2—appears to be based entirely on state law and is thus not cognizable here. Lewis veers into ineffective-assistance-of-counsel territory by suggesting his Taquechel should have filed a motion for a new trial. (Doc. #2 at 12). But she did file such a motion. (Doc. #12-2 at 17). So even if the Court generously construes Ground 3 as an ineffective-assistance claim, the record refutes it. Ground 3 is denied.

### d. Ground 4: Trial counsel failed to object to photographs of the victim

Lewis argues Taquechel should have objected to the State's repeated publication of pictures of Gordon Suleiman's body because

11

they were prejudicial and inflammatory.  The postconviction court provided a detailed analysis of why the photographs were admissible under Florida law:

> 12. First, the Court notes that the homicide incident in this case was not a brutal stabbing, dismemberment, or other type of gruesome and highly violent death. Rather, the victim was killed with a single gunshot wound to the chest.  The fact that the jury was shown photos of the body as it was found by law enforcement is not automatically unduly prejudicial.  Moreover, several photos that Defendant objects to are shots of the crime scene generally or other objects found at the scene.  In these photos, the body is seen incidentally.  These photos cannot reasonably be characterized as shocking, disturbing or likely to cause the jury to be unable to focus during deliberations.
>
> 13. The record indicates that the photos were introduced in order to prove a number of relevant details about the case, including law enforcement's preservation of the crime scene, the area around the body, the condition of the victim's firearm, the preservation of any evidence that could be found on the victim's hands, the face of the victim for identification purposes, the trajectory of the bullet that killed the victim and the manner in which it killed him, and how the projectile was recovered from the body.  The Court has reviewed the photographs cited in Defendant's motion and finds that they depict, at most, a "PG-13" level of violence.  Defendant does not identify any element of the cited photographs that causes them to be truly, unduly prejudicial.
>
> 14. The only photo that could plausibly be considered prejudicial is a black and white photograph of the victim's heart, which was taken during the autopsy, after it was removed from his body.  This black and white photo was entered into evidence in order to demonstrate the severe damage done to the victim's heart by the single gunshot wound.  The Court finds that this photo was not unduly prejudicial, largely thanks to its publication in black and white and the fact that the organ was removed from the body and photographed

> separately. The victim is not seen in the photograph. Moreover, even if the photo could be considered prejudicial, it had important probative value and it was not so prejudicial that it inappropriately affected the jury's verdict. Finally, even if prejudicial, the prejudice did not outweigh the other, significant amount of evidence presented at trial that proved Defendant's guilt and contradicted his theory of defense.

(Doc. #12-3 at 7-8). The postconviction court concluded that "[b]ecause the photos were not unduly prejudicial, counsel could not have been ineffective for failing to object to them on that basis." (Id. at 8).

A federal habeas court cannot find counsel ineffective for failing to make an objection based on state law after a state court has determined the objection would have been overruled. Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005). Granting habeas relief in such a case would require the federal court to conclude the state court misinterpreted state law, which would be inconsistent with the "fundamental principle that state courts are the final arbiters of state law." Id.

The postconviction court explained that objections to the photographs would have been meritless under Florida law. Thus, Taquechel was not ineffective for failing to make them, and Lewis was not prejudiced. Ground 4 is denied.

13

### e. Ground 5: Trial counsel failed to sever the drug-paraphernalia charge or advise Lewis to plead guilty to it

Lewis next contends that Count 3—possession of drug paraphernalia—had nothing to do with Counts 1 and 2, and it allowed the State to present prejudicial evidence that Lewis had a pipe with methamphetamine reside when police found him. Lewis argues Taquechel should have either moved to sever Count 3 or advised Lewis to plead guilty to Count 3 so the drug-possession evidence could be excluded.

The postconviction court found that Lewis failed to satisfy either Strickland prong for a host of reasons:

> 16…The Court finds that there is no reasonable likelihood that severance of count 3 would have changed the jury's verdict on counts 1 and 2, considering the other evidence of Defendant's guilt presented at trial. Moreover, the facts relating to count 3 were sufficiently intertwined with counts 1 and 2 because the methamphetamine pipe was discovered by police following Defendant's extended, continuous attempt to evade law enforcement. The pipe also shows intent as to why Defendant was so determined to avoid being taken into custody by the bondsmen. There was no "episodic" division between counts 1 and 2 and count 3 because all three crimes were committed in the course of Defendant's attempt to evade custody for his failure to appear for violation of probation proceedings. See Fotopoulos v. State, 608 So. 2d 784 (Fla. 1992). Defendant's argument that there was "no relationship" between count 3 and counts 1 and 2 is incorrect. Similarly, Defendant's allegation that pleading to count 3 before trial would have prevented *any* evidence relating to count 3 from being presented at trial is a conclusory allegation. The motion contains no legal argument explaining why entering a plea to count 3 would have necessarily


prevented the State from admitting evidence of the pipe. Defendant has failed to show that count 3 was not linked to the other charges or that presentation of evidence related to count 3 affected the jury's verdict on counts 1 or 2.

17. Alternatively, the Court finds that there is no likelihood that evidence relating to count 3 could have made the jury improperly speculate that the Defendant was high on meth at the time of the crime. The record indicates that the State and defense counsel entered a stipulation into evidence that a blood sample from Defendant was sent to FDLE for testing and the results showed no trace of drugs or alcohol. This stipulation was read into evidence by the judge prior to Defendant's trial testimony…Additionally, a document stating the stipulation was sent back to the jury room as an admitted exhibit during deliberation to help the jury remember the stipulated facts. Accordingly, the Court finds that there is no likelihood that the evidence presented to prove count 3 caused the jury to engage in the prejudicial speculation described in Defendant's motion.

(Doc. #12-3 at 9-10).

The postconviction court's determination that, under Florida law, the State could have presented evidence of the pipe even without Count 3 is fatal to Lewis's argument here. As with Ground 4, granting relief on this ground would require the Court to find error in the state court's application of state law, which this Court cannot do. See Callahan, supra. The postconviction court's application of state law fatally undermines both prongs of Strickland. Severing or pleading guilty to Count 3 would not have led to the exclusion of the pipe. Ground 5 is denied.

15

### f. Ground 6: Trial counsel failed to object to Bail Bond Agent jury instruction

Lewis argues that Taquechel should have objected to the trial court's Bail Bond Agent jury instruction because it might have confused the jury about his defense—that Lewis did not know Gordon Suleiman was a bondsman, and if he had known he would have surrendered. Lewis does not explain in his habeas filings how the instruction misled the jury. He was more specific in his state postconviction motion, which identified this portion of the instruction:

> A licensed bail bond agent is not allowed to wear or display any identification other than the department issued or approved license or approved identification, which includes a citation of the licensee's arrest powers, in or on the property or grounds of a jail, prison, or other place where prisoners are confined or in or on the property or grounds of any court.

(Doc. #12-2 at 266-67). Lewis suggested the instruction might have led the jury to believe "that Mr. Suleiman was not permitted to wear or display any type of badge or identification at any time." (Id. at 268).

As with Grounds 4 and 5, the postconviction court denied this ground because the proposed objection would have been overruled:

> [T]he Court finds that the bail bondsmen jury instruction is, as a matter of law, not ambiguous or misleading in the manner that Defendant claims in his motion, because the instruction includes the words "other than the department issued or approved identification," which clearly indicates that bondsmen

16

*are* legally permitted to display a type of identification. Moreover, the instruction clearly indicates that it applies to bondsmen only when they are on the property of a jail, prison, or court. Counsel cannot be ineffective for failing to make the objection proposed in Defendant's motion because the objection is meritless.

(Doc. #12-3 at 10). Again, this Court must defer to the state court on matters of state law. See Callahan, supra. Because an objection to the instruction would have been meritless, Lewis cannot show either Strickland prong. Ground 6 is denied.

### g. Ground 7: Trial counsel failed to file a Stand Your Ground motion

Lewis next argues Taquechel was deficient for failing to file a motion to dismiss under Florida's Stand Your Ground law. The postconviction court rejected this claim because Lewis could not have met the standard governing Stand Your Ground motions:

> 20. Under the law in effect at the time to crime was committed and this case was pending, Defendant would have been entitled to prosecutorial immunity if he proved by a preponderance of the evidence that the use of force was justified as permitted in Fla. Stat. §776.012, §776.012, or §776.031. See Dennis v. State, 51 So. 3d 456 (Fla. 2010); Bretherick v. State, 170 So. 3d 766 (Fla. 2015).
>
> 21. Defendant has failed to prove sufficient error or prejudice under Strickland because he has failed to show that a motion to dismiss based on §776.032 had any reasonable likelihood of being granted.
>
> 22. In his motion, Defendant pleads that he told his attorney his version of the events leading up to the shooting, including his claim that he did not know the victim was a bail bondsman and believed his life was in danger because the victim was carrying a gun. These

facts are substantially identical to the testimony
Defendant gave at trial. As evidenced by the verdict,
the jury did not find Defendant's testimony to be
credible. The Court has reviewed the trial transcript
and also does not find Defendant's testimony to be
credible. Many of the details that Defendant provided
about what happened were highly implausible and were not
credible in light of other witness testimony presented
at trial.

23. At trial and at all times pre-trial, Mrs. Suleiman
consistently said that the victim was yelling "Bondsman!
Bondsman!" as he chased after Defendant. Moreover, Mrs.
Suleiman testified that the victim had stopped running
after Defendant, put his hands up, and did not have his
gun pointed at Defendant at the time Defendant shot him
in the chest. The totality of the evidence refutes
Defendant's claim that he did not know the victim was a
bondsman and that the victim was threatening him at the
time he was shot. Considering the available evidence
and testimony, the Court finds that Defendant would not
have been able to meet his burden to prove justifiable
force by a preponderance of the evidence even if counsel
had filed a pre-trial motion to dismiss based on "Stand
Your Ground."

(Doc. #12-3 at 10-12).

The Court must give deference to the postconviction court's determination that Lewis could not have shown entitlement to Stand Your Ground immunity under Florida law. See Callahan, supra. The state court's factual determinations, including questions of credibility, are also presumed correct. Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011). Based on the postconviction court's factual findings and application of Florida law, Lewis could not have succeeded in a Stand Your Ground hearing, so Taquechel's failure to request one was not unreasonable and did

not prejudice Lewis.  Ground 7 is denied.

### h. Ground 8: Cumulative effect of errors

Finally, Lewis argues the cumulative effect of previous seven grounds warrants habeas relief.  But because none of Lewis's seven grounds have merit, there is no error to accumulate.  See Ballard v. McNeil, 785 F. Supp. 2d 1299, 1336 (N.D. Fla. 2011) ("cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors"); see also United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1084) ("Without harmful errors, there can be no cumulative effect compelling reversal.").  Ground 8 is denied.

### IV. Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement

to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (citations omitted). Lewis has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

Accordingly, it is now

**ORDERED:**

1. Petitioner Koty Cheyenne Lewis's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. #1) is **DENIED.**

2. The Clerk is **DIRECTED** to enter judgment, terminate any pending motions or deadlines, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida this ___1st___ day of July 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA: FTMP-1
Copies: All Parties of Record